F. W. MYERS & CO., INC., ET AL. *v.* UNITED STATES

No. 4722.—Invoices dated Montreal, Canada, January 12, 1935, etc.
Certified January 12, 1935, etc.
Entered at Rouses Point, N. Y., January 8, 1935, etc.
Entry Nos. A–1620, A–1692, etc.

(Decided on remand (Reap. Dec. 4441) February 6, 1940)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiffs.

*Webster J. Oliver*, Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the defendant.

EVANS, Judge: These are appeals to reappraisement from findings of value made by the local appraiser on certain skis and ski poles

imported from Canada and entered at the port of Rouses Point, N. Y. Three cases were consolidated for trial. Both entry and appraisement were made upon the basis of foreign value as defined in section 402 (c) of the Tariff Act of 1930. On the original trial of the case the single judge found that the presumption of correctness attaching to the appraised values had not been overcome by the evidence and those values were affirmed. (Reap. Dec. 4015). Upon appeal to a division of three judges the court held that the special agent's reports offered in evidence by the Government were improperly admitted by the single judge on the ground that neither was properly authenticated. That division therefore remanded the cases to the trial court for a new trial.

Upon remand to a single judge a certification had been attached to each of these exhibits and it was stipulated that as to the carbon copy of the report the signature affixed thereto is authentic, and the reports were again offered in evidence. The attorney for the importers objected to the reports being received in evidence on the grounds set forth in the first hearing. These reasons, as set forth in the record, are that certain statements in the report are inconsistent and further that said reports refer to sales at other seasons than that covered by the present importations, and are incompetent, irrelevant, and immaterial. This objection was taken under advisement by me and is now overruled on the ground that the objections go only to the weight to be given the report, and the weight of evidence is a matter for the court to determine upon consideration of the same.

At the hearing on remand the importers introduced the testimony of Mr. James Ware, vice president of the manufacturing concern in Canada. The record in the original trial was also offered in evidence and admitted by consent. The case, therefore, is before me on the original record plus the testimony given by Mr. Ware.

At the original hearing the president of the manufacturing company testified that his company was willing to sell to any buyer possessing good credit, skis and ski poles identical with those now before the court in the usual wholesale quantities and at ·the prices at which these were invoiced and entered. He also testified that identical skis and ski poles were freely offered for sale to all purchasers in Canada in the usual wholesale quantities for home consumption or for exportation to the United States. This witness, however, offered no proof of actual sales at the invoiced and entered prices.

From the testimony of these two witnesses it further appears that identical merchandise was sold and offered for sale to all purchasers who made an initial order of 100 pairs or more in any season, at the unit prices at which the various items here involved were entered. It further appears that any subsequent orders from purchasers of an

initial order of 100 pairs or more in any season, even though in smaller quantities, were filled during that season at the same unit prices. The testimony shows that the season for this merchandise begins in March of one year and ends at the end of February of the following year. The record also shows that this manufacturer did 80 or 90 per centum of the ski and ski pole business in Canada.

On the question of the usual wholesale quantity it was proven that in order to obtain advantage of the prices contended for here customers must take an initial order of 100 pairs. The vice president of the manufacturing company stated on the stand that they had approximately two hundred customers in Canada of which number approximately 75 per centum placed initial orders during the season of 1934—the season the instant merchandise was imported—for 100 pairs of skis or ski poles. The remaining customers during that period paid prices ranging from 5 per centum to 20 per centum higher. It would seem that the prices at which these skis and ski poles were invoiced and entered were not the freely-offered prices under the statute (section 402 (d) of the Tariff Act of 1930). The language of that section is "freely offered for sale to all purchasers in the principal markets," etc. Can we then say that where the only buyers who could obtain these prices were those who gave an initial order for 100 dozen, the articles were freely offered to all purchasers at the claimed dutiable value? I think not. It is true that the evidence shows that 75 per centum of this firm's customers took advantage of this offer and obtained the lower prices, but we have no evidence of the number of sales made at these prices. The so-called analysis of sales attached to the supplemental report of the special agent (Exhibit 1) fails to give the number of sales made at the various prices, but gives instead the number of skis or ski poles sold and the prices paid for them. The importers' attorney examined the witness Ware in considerable detail to establish the numbers of skis of the various types and values that had been sold during the period of time to be considered herein. It seemed to be in the attorney's mind that the number of skis and ski poles of each type sold would be the determining factor. As we interpret the decisions it is not the number of articles sold that is the important factor but it is the majority of sales of a particular type at the uniform price which determines what is to be considered the usual wholesale quantity. The testimony of the witness Ware added nothing to the record which would enable us to determine the freely offered for sale price to all purchasers in the usual wholesale quantity either for exportation or for domestic consumption.

We think the case of *United States* v. *A. W. Faber, Inc.*, 21 C. C. P. A. (Customs) 290, T. D. 46817, is controlling here. In that case there were two classes of wholesalers. One class, whose purchases

amounted to a specified sum per year, was granted a certain discount, but the other class, whose purchases amounted to less than that sum, was not allowed such discount. The court held, that, inasmuch as the special discount was not allowed to all purchasers in the usual wholesale quantities and in the ordinary course of trade, it was not deductible in determining the price to all purchasers. It was further held that—

although, in determining what are *usual* wholesale quantities, the major portion of sales or offers for sale in wholesale quantities should be the criterion, it does not follow from that fact that a discount from list or invoice prices should be allowed in arriving at foreign value if it is shown,  *  *  *  that only a majority of the purchasers in the usual wholesale quantities, and in the ordinary course of trade, receive such discount.

The court pointed out that the statute contemplated the price to *all* purchasers, not a majority of such purchasers.

Applying that reasoning here we find that only a majority of the purchasers in the usual wholesale quantities and in the ordinary course of trade receive the prices at which these goods were invoiced and entered; that such prices are available to only a restricted group and not to *all* purchasers.

It therefore appears that, as all purchasers did not receive these prices without restrictions, they were not the prices at which this merchandise was *freely* offered to all purchasers in the ordinary course of trade.

A consideration of the special agent's reports shows that the original report relates to sales to Canadian firms that were allowed to purchase at special prices not available to others who might purchase in the same quantities. The supplemental report gives an analysis of sales but contains no information as to how these sales were made, whether by purchasers who bought an initial lot of 100 pairs or more in any one season or by persons buying in smaller quantities, or whether the quantities set forth in the tabulations were from persons buying less than the 100 pair initial lot. Nor are there any copies of actual invoices to support these schedules.

I find upon this record that the merchandise consists of skis and ski poles, of various materials, sizes, and shapes, invoiced and entered at various prices. I further find that the plaintiffs have failed to produce evidence sufficient to sustain the invoice and entered prices and that the reports of the Government agent are not such proof as would enable me to find any values other or different from those found by the appraiser, which are presumptively correct. The presumption of correctness attaching to those values not having been overcome, they are hereby affirmed.

Judgment will be rendered accordingly. It is so ordered.